**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **KAREN E. SOPER,** | )    **NO. CV 10-04521-MAN** |
|            **Plaintiff,** | ) |
| | )    **MEMORANDUM OPINION** |
|        **v.** | ) |
| | )    **AND ORDER** |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|          **Defendant.** | ) |
| _____ | ) |

Plaintiff filed a Complaint on June 25, 2010, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for Disabled Widow's Benefits. On August 2, 2010, the parties consented to proceed, pursuant to 28 U.S.C. § 636(c), before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on February 23, 2011, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits; and defendant requests that the Commissioner's decision be affirmed or, alternatively, remanded for further administrative proceedings. The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On November 9, 2006, plaintiff's husband passed away, and on March 8, 2007, plaintiff filed an application for benefits as a disabled widow. (Administrative Record ("A.R.") 12.) Plaintiff, who was born on November 23, 1956 (A.R. 44),[1] alleges an inability to work since June 19, 2006, due to arthritis and fibromyalgia (A.R. 46-49, 57-60). Plaintiff has no past relevant work experience, because she had no earnings in the past fifteen years that met the criteria for substantial gainful activities. (A.R. 20.)

The Commissioner denied plaintiff's application initially on April 5, 2007 (A.R. 46-49), and upon reconsideration on August 31, 2007 (A.R. 57-61). Plaintiff filed a written request for a hearing on October 16, 2007. (A.R. 7.) On February 17, 2009, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Joseph D. Schloss (the "ALJ"). (A.R. 23-43.) Vocational expert Corinne J. Porter and medical expert Arthur Lorber, M.D., an orthopedic surgeon, also testified. (*Id.*) On June 25, 2009, the ALJ denied plaintiff's claim (A.R. 9-21), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3). That decision is now at issue in this action.

///

///

///

---

[1] On the alleged disability onset date, plaintiff was 49 years old, which is defined as a "younger individual." (A.R. 20.) Plaintiff "subsequently changed age category to closely approaching advanced age." (*Id.; citing* 20 C.F.R. § 404.153.)

The ALJ found that plaintiff has not engaged in substantial gainful activity since June 19, 2006, the alleged onset date of plaintiff's claimed disability. (A.R. 14.) The ALJ further found that plaintiff has no past relevant work history (A.R. 19), is closely approaching advanced age, and has at least a high school education (A.R. 20). The ALJ determined that plaintiff has the severe impairments of degenerative joint disease of the shoulder, degenerative disc disease of the lumbar/cervical spine, and fibromyalgia. (A.R. 14.) The ALJ also determined that plaintiff does not have an impairment or combination of impairments that meets or equals any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525 and 404.1526). (A.R. 15.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") "to perform less than a full range of light work as defined in 20 C.F.R. 404.1567(b)" and concluded that plaintiff:

> can occasionally lift and/or carry 20 pounds and frequently
> 10 pounds; she is limited to pushing and pulling within the
> same weight restrictions; she can stand and/or walk six
> hours in an eight-hour work day and sit for six hours with
> a sit/stand/walk option; she can occasionally climb, bend,
> stoop, squat, and balance; she can occasionally reach
> overhead with the right upper extremity; she is precluded
> from crawling or climbing ladders, ropes or scaffolds; she

3

should not work in an environment with concentrated exposure to extreme heat or cold; she should not work at unprotected heights; and she is precluded from using hazardous equipment.

(A.R. 15.)

The ALJ concluded that transferability of job skills is not an issue, because plaintiff does not have past relevant work. (A.R. 20.) Having considered plaintiff's age, education, work experience, RFC, as well as the testimony of the vocational expert, the ALJ found that jobs exist in the national economy that plaintiff can perform, including those of mail clerk, furniture rental consultant, and garment sorter. (A.R. 20.) Accordingly, the ALJ concluded that plaintiff has not been under a disability within the meaning of the Social Security Act from June 19, 2006, through the date of his decision. (A.R. 21.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn

4

from the record' will suffice." <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y of Health & Hum. Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(quoting <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

///

///

///

**DISCUSSION**

Plaintiff alleges the following two issues: (1) whether the ALJ erred in his analysis of the medical and vocational evidence; and (2) whether the ALJ erred in his evaluation of plaintiff's credibility and subjective symptoms. (Joint Stipulation ("Joint Stip.") at 2-3.) The Court addresses these issues, in reverse order, below.

**I.   The ALJ Failed to Give Clear And Convincing Reasons For Finding Plaintiff's Testimony To Be Only Partially Credible.**

Once a disability claimant produces objective evidence of an underlying impairment that is reasonably likely to be the source of her subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991)(en banc); *see also* 20 C.F.R. § 404.1529(a)(explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." <u>Robbins</u>, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See* <u>Thomas v.</u>

Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1529(c).

The ALJ found that "after careful consideration of the evidence . . . [plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." (A.R. 17.) Further, the ALJ cited no evidence of malingering by plaintiff. Accordingly, the ALJ's reason for rejecting plaintiff's credibility must be "clear and convincing."

The ALJ does not dispute that plaintiff has demonstrated objective evidence of severe physical impairments. However, the ALJ found that plaintiff's subjective testimony regarding the severity of her pain symptoms was not credible. The ALJ generally stated two grounds, and implied two others, for rejecting plaintiff's credibility about the severity of her pain. (A.R. 15-19.) The ALJ stated that: (1) plaintiff's allegations about when her pain began were inconsistent; and (2) plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms were not supported by "the clinical and diagnostic medical evidence." (A.R. 17.) The ALJ also implied that: (3) plaintiff's daily activities appear to be inconsistent with her alleged limitations; and (4) the fact that she "admitted no doctor has reported her to the Department of Motor Vehicles (DMV) to restrict her driving privileges due to physical impairments" appears to be inconsistent with her alleged limitations. (A.R. 16.) These reasons, while specific, do not constitute clear and convincing reasons based on substantial evidence as required.

7

The ALJ's first ground is not clear and convincing, because he isolates three words -- "no prior problems" -- from a report by one doctor -- Brent R. Davis, M.D., an orthopedic surgeon -- to mischaracterize the record. *See* <u>Reddick v. Chater</u>, 157 F.3d 715, 722-23 (9th Cir. 1998)(reversing and remanding case, because ALJ's characterization of the record was "not entirely accurate regarding the content or tone"); *see also* <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984)(holding that it was error for an ALJ to ignore or misstate competent evidence in the record to justify his conclusion). The ALJ asserts that plaintiff's "allegations that her pain began as early as 2002 are inconsistent with her statements in the treatment record." (A.R. 16.) This is not the case.

When, on March 6, 2007, plaintiff saw Dr. Davis for an orthopedic surgery consultation as a result of her right shoulder pain, Dr. Davis noted "no prior problems" in plaintiff's history. (A.R. 168.) However, the consultation with Dr. Davis was only to examine the need for surgery on her right shoulder; it was not for a general assessment of her fibromyalgia, degenerative disc disease of the lumbar/cervical spine, or any other condition that might cause plaintiff to experience pain. Dr. Davis' notation of "no prior problems" thus should be read in context as referring only to her right shoulder about which she sought his opinion. In fact, Dr. Davis noted plaintiff had a history of chronic pain in the neck and shoulder area, and he noted a recent diagnosis of fibromyalgia in plaintiff's medical history. (A.R. 168.) As plaintiff did not claim to have pain in her shoulder before May 2006, Dr. Davis' and plaintiff's statements are not inconsistent.

Plaintiff claimed to have pain in her foot and knee starting in 2002; in her neck, rib cage, and back starting in January 2005; in her hips since January 2007; and in her hands since her 20s. (A.R. 119.) On November 21, 2006, plaintiff saw Dr. Pearly Lim, M.D., a rheumatologist, for a consultation. (A.R. 170.) Dr. Lim noted that plaintiff developed knee, lower back, and neck pain with associated stiffness "several years ago." (A.R. 170.) While Dr. Lim was not specific as to the exact onset date of plaintiff's pain, plaintiff's treatment records may not fairly be said to contradict plaintiff's statement that her pain began in 2002. The ALJ's isolation of three words from one doctor's opinion is a mischaracterization of the record and, therefore constitutes error.

The ALJ's second ground is not clear and convincing, because he relies on a lack of clinical and diagnostic evidence to support his disbelief in the severity of plaintiff's pain allegations when, by the very nature of fibromyalgia, there generally is very little, if any, objective clinical or diagnostic evidence upon which the fibromyalgia diagnosis is based. *See* <u>Sarchet v. Chater</u>, 78 F.3d 305, 306 (7th Cir. 1996)("Fibromyalgia . . . [is an] elusive and mysterious disease"; "[it]s cause or causes are unknown, there is no cure, and, of great importance to disability law, its symptoms are entirely subjective"). Because of its nature, "there are no laboratory tests for the presence and severity of fibromyalgia." *Id.*[2] The ALJ relies on physical

---

[2] "'[T]he only symptom that discriminates between [fibromyalgia] and other diseases of a rheumatic character' [are] multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient has to have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to

examinations of plaintiff performed by various doctors, which found only limited or mild degenerative problems in the spine and moderate to severe degenerative changes in the right shoulder, to assert that the pain caused by plaintiff's fibromyalgia could not be as severe as claimed.  (A.R.  17-18.)  This is not a legitimate ground for discrediting plaintiff's credibility, because there are no objective tests that could have been performed to prove plaintiff's subjective claims regarding her degree of pain.

Further, the failure of the medical record to corroborate fully plaintiff's subjective symptom testimony is not, by itself, a legally sufficient basis for rejecting such testimony.  <u>Rollins</u>, 261 F.3d at 856; <u>Bunnell</u>, 947 F.2d at 347 (noting that "[i]f an adjudicator could reject a claim of disability simply because [plaintiff] fails to produce evidence supporting the severity of the pain there would be no reason for an adjudicator to consider anything other than medical findings").  Accordingly, the ALJ's finding that the objective evidence does not support the extent of plaintiff's symptoms cannot, by itself, constitute a clear and convincing reason for discrediting plaintiff's testimony.  *See* <u>Varney v. Secretary</u>, 846 F.2d 581, 584 (9th Cir. 1988); <u>Cotten v. Bowen</u>, 799 F.2d 1403, 1407 (9th Cir. 1986); *see also* <u>Burch</u>, 400 F.3d at 681.

---

flinch."  <u>Rollins  v.  Massanari</u>,  261  F.3d  853,  855  (9th  Cir. 2001)(*quoting* <u>Sarchet</u>, 78 F.3d at 306).  On February 5, 2007, when examined by Dr. Thang T. Le, a rheumatologist, plaintiff exhibited tenderness in 14 out of the possible 18 fixed locations (A.R. 250); and on August 8, 2007, when examined by Dr. Parke King Chang, also a rheumatologist, plaintiff exhibited tenderness in 12 out of the possible 18 fixed locations (A.R. 243).

The ALJ's third ground is not clear and convincing, because plaintiff's daily activities are not inconsistent with her reported pain or limitations. An ALJ may not rely on a plaintiff's daily activities to support an adverse credibility determination when those activities do not suggest that the claimant has the ability to perform work activities on an ongoing and daily basis. Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990). As the Ninth Circuit noted in Lester, the ALJ must evaluate claimant's "'ability to work on a *sustained* basis.'" Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995)(*citing* 20 C.F.R. § 404.1512(a)). A claimant need not be "utterly incapacitated to be eligible for benefits, . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).

To support his adverse credibility finding on this ground, the ALJ stated that plaintiff "admitted her bedroom was on the second floor where she lived and she had to walk down the stairs daily"; "she reported being able to wash dishes, wipe the counters, and sort laundry"; "[she] admitted she fed her two cats and fish"; "[and] she conceded she was able to take care of her own personal hygiene." (A.R. 16.) While the ALJ did not directly state that plaintiff's daily activities were inconsistent with her subjective pain testimony, the language used to describe plaintiff's statements, *i.e.* "admitted" and "conceded", along with their placement directly following his finding that plaintiff is only "partially credible," indicate that the ALJ used plaintiff's daily activities, in part, as a ground to discredit her statements. The Court finds this ground unconvincing, because

11

plaintiff's limited daily activities do not show that she would be able to work on a "sustained basis" in the workplace. *See* <u>Lester</u>, 81 F.3d at 833. Indeed, as the ALJ noted, plaintiff testified that while she may be able to perform these several tasks, she has to "take breaks every fifteen minutes," "[cannot] clean the litter box," and "drop[s] things a lot." (A.R. 16.) The ALJ fails to explain how plaintiff's ability to undertake basic activities and light household chores, with frequent breaks, translates into the ability to perform full-time work. *See* <u>Fair</u>, 885 F.3d 602. This constitutes error.

The ALJ's fourth ground also is not clear and convincing, because the fact that "upon further questioning, plaintiff admitted no doctor has reported her to the Department of Motor Vehicles (DMV) to restrict her driving privilege due to physical impairments" (A.R. 16) is not a factor which the ALJ is allowed to consider in weighing a claimant's credibility. *See* <u>Thomas v. Barnhart</u>, 278 F.3d at 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1529(c). As with ground three, the ALJ did not specifically articulate that this was a ground on which he based his decision to discredit plaintiff's credibility, but from his questioning of plaintiff in the record (A.R. 34); the language used in his decision, *i.e.* "she admitted"; and the placement of this ground directly following his finding that plaintiff is only "partially credible," it is apparent that the ALJ considered this ground, at least in part, in determining plaintiff's credibility. This constitutes error.

Accordingly, for the aforementioned reasons, the ALJ failed to give clear and convincing reasons, as required, for discrediting plaintiff's

subjective pain testimony.

## II.  **The ALJ Erred In His Analysis Of The Medical Evidence.**

Plaintiff claims that the ALJ:  (1) improperly discredited the Functional Capacity Questionnaire completed by plaintiff's treating physician, Jennifer Magalong, an internist; (2) improperly relied on the medical expert, Dr. Lorber, because he is not qualified to testify regarding the diagnosis of fibromyalgia; and, (3) went outside the record and offered his own medical opinion about fibromyalgia.[3]  (Joint Stip. at 4.)

## A.  **On Remand, The ALJ Must Reconsider The Physical Residual Functional Capacity Questionnaire Completed By Plaintiff's Treating Physician.**

It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence.  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in

---

[3]     While not raised by plaintiff, the Court notes that the ALJ must also consider all the side effects of plaintiff's pain medication and their impact on plaintiff's ability to work.  *See* <u>Erickson v. Shalala</u>, 9 F.3d 813, 817-18 (9th Cir.1993)(noting that an ALJ must consider all factors, including the side effects of medications, that might have a "'significant impact on an individual's ability to work'")(citation omitted); *see also* Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2-*3, 1996 SSR LEXIS 4, at *7-*8 (noting that the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms should be considered in the disability evaluation); 20 C.F.R. § 404.1529(c)(3)(iv).  The ALJ casually mentions that plaintiff had hot flashes from ibuprofen (A.R. 16), but plaintiff testified that she has severe hot flashes that cause her to "wake up every 20 minutes all night long drenched in sweat . . . ." (A.R. 37). Plaintiff also testified that "the Amitrypilline will knock [her] out for maybe an hour or so."  (A.R. 38.)  The ALJ's failure to consider these side effects constitutes error.

assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d). The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant. Magallanes, 881 F.2d at 751. When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. When contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*

On February 4, 2009, plaintiff's treating physician, Dr. Magalong, completed a Physical Residual Functional Capacity Questionnaire ("questionnaire") in which she diagnosed plaintiff with fibromyalgia and cervical radiculopathy, with an onset date of 2005. (A.R. 399-403.) Significantly, Dr. Magalong opined that, as a result of plaintiff's fibromyalgia, plaintiff would have numerous functional limitations in a competitive work place.[4] (*Id.*)

[4] Specifically, Dr. Magalong opined that: plaintiff was not a malingerer; her depression affected her physical condition; her impairments are reasonably consistent with the symptoms and functional limitations described in the questionnaire; her pain is frequently severe enough to interfere with attention and concentration needed to perform even simple work tasks; she is capable of low stress jobs; she can walk only half a city block without rest or severe pain; she can sit or stand for 15 minutes at a time; she can sit and stand/walk for 2 hours with normal breaks in an 8-hour workday; she must get up to walk every 15 minutes for 10 minutes; plaintiff needs a job at which she can shift positions from sitting to standing at will; she will have to take

The ALJ reviewed Dr. Magalong's questionnaire but discredited it, because: (1) Dr. Magalong relied almost entirely on plaintiff's subjective complaints, which the ALJ found to be only partially credible; (2) the ALJ found the treating relationship between Dr. Magalong and plaintiff to be brief; (3) the ALJ found the questionnaire to be internally inconsistent; and (4) the ALJ found the questionnaire to be without substantial support from the other evidence of record. (A.R. 18.) The Court does not find these grounds to be specific and legitimate reasons to discredit the questionnaire completed by plaintiff's treating physician.

The ALJ's first ground is not legitimate, because as discussed above, the ALJ's rejection of plaintiff's subjective testimony was not well-founded, and the principle means of diagnosing fibromyalgia is through subjective symptoms. <u>Sarchet</u>, 78 F.3d at 306. Because of its nature, "there are no laboratory tests for the presence and severity of fibromyalgia." *Id.*

The ALJ's second ground is not legitimate, because he incorrectly described the length and extent of the treating relationship between Dr. Magalong and plaintiff. The ALJ stated that "Dr. Magalong began treating the claimant on February 4, 2008, and completed the questionnaire on August 4, 2008." (A.R. 18.) This is not the case. In actuality, Dr. Magalong did begin treating plaintiff on February 4,

unscheduled breaks every 2-4 hours for around 30 minutes each; she can rarely lift less than 10 pounds and should never lift more than 10; she can occasionally twist, but can only rarely bend, crouch, climb ladders, or climb stairs; she has significant limitations reaching, handling, or fingering; and she will likely miss more than four days of work a month. (A.R. 399-403.)

2008, but she completed the questionnaire on *February 4, 2009*, and she stated on the questionnaire that plaintiff saw her every three months during that period.   (A.R. 266, 398, 403.)   The ALJ erred when he incorrectly characterized the length and extent of the treating relationship between Dr. Magalong and plaintiff.

The ALJ's third ground is not legitimate, because the Court does not find the questionnaire to be inconsistent.   The ALJ states that "Dr. Magalong noted the [plaintiff]'s symptoms as 'numbness/tingling from neck into below arms [and] fingers'" and that "Dr. Magalong did not even mention [plaintiff] felt any pain, yet she diagnosed [plaintiff] as having fibromyalgia . . . ."   (A.R. 18.)   While Dr. Magalong did not include pain as a symptom in her response to question four of the questionnaire, which asked about symptoms, she included plaintiff's pain symptoms directly below in response to question five, which specifically asked about pain.   (A.R. 399.)   The Court does not find the fact that Dr. Magalong chose to write about plaintiff's pain only in response to question five, and not also in response to question four, to be a legitimate reason to find the questionnaire internally inconsistent and, therefore, not credible.

The ALJ's fourth ground is not legitimate, because plaintiff's lack of *objectively* determinable physical ailments does not mean that Dr. Magalong's opinion is not supported by the record.   The ALJ asserts that Dr. Magalong's "opinion is without substantial support from the other evidence of record, which obviously renders it less persuasive."   (A.R. 18-19.)   To support his finding, the ALJ lists findings of doctors and surgeons who had previously examined plaintiff and found only minimal

objectively determinable physical ailments. (A.R. 17-18.) However, fibromyalgia is a diagnosis of last resort. It is not well-understood, its symptoms are subjective, and it is difficult to diagnose. *See* Jordan v. Northrop Grumman Corp. Welfare Plan, 370 F.3d 869, 872 (9th Cir. 2004)(*overruled on other grounds in* Abatie v. Alta Health & Life Ins., 458 F.3d 955, 970 (2006)(noting that "fibromyalgia's cause or causes are unknown, there is no cure, and of greatest importance to disability law, its symptoms are entirely subjective"). The fact that plaintiff has only minimal objectively determinable ailments does not mean that Dr. Magalong's opinion is unsupported. As discussed above, there generally is very little, if any, objective clinical or diagnostic evidence upon which the fibromyalgia diagnosis is based. As plaintiff's treating physician, Dr. Magalong is in the best position to determine the severity of plaintiff's fibromyalgia and is best situated to determine plaintiff's limitations. Also, Dr. Magalong is not the only physician of record who diagnosed plaintiff with fibromyalgia. Dr. Le Thang, M.D., diagnosed plaintiff with fibromyalgia in 2007 (A.R. 164-166), and Dr. Parke King Chang, M.D., also diagnosed plaintiff with fibromyalgia in 2007 (A.R. 243). Given plaintiff's fibromyalgia diagnoses, the lack of objective medical evidence is not a legitimate reason to discredit plaintiff's treating physician's assessment.

Furthermore, none of the doctors the ALJ listed opined about plaintiff's ability to sustain employment. The ALJ examined the medical records and came to his own conclusion that the assessment of plaintiff's limitations by Dr. Magalong was not credible, because he thought the record only supported minimal limitations in her ability to sustain employment. (A.R. 17.) The ALJ is not a doctor, and he is not

qualified to make his own determinations on the physical capabilities of plaintiff. His choice to do so constitutes error.

On remand, because the ALJ failed to give legitimate reasons to discredit the questionnaire of plaintiff's treating physician, the ALJ must provide such reasons or give the questionnaire controlling weight. The ALJ must also refrain from asserting his own lay opinion about plaintiff's physical abilities.

**B.** **The ALJ Should Not Rely On The Opinions Of The Medical Expert And Medical Consultant Over The Opinion Of Plaintiff's Treating Physician.**

In making his determination, and posing hypothetical questions to the vocational expert, Ms. Porter, the ALJ relied on the opinions of the medical expert, Dr. Lorber, and the RFC assessment by Dr. F. Kalmar, M.D. (A.R. 24-43.) This constitutes error because: (1) the evaluation by Dr. Magalong should have been given more weight than either Dr. Lorber's or Dr. Kalmar's opinion; (2) Dr. Lorber did not factor fibromyalgia into his assessment, even though plaintiff has been diagnosed with fibromyalgia by multiple treating physicians, because he "[does not] give much weight to the diagnosis of fibromyalgia" (A.R. 29); and, (3) the assessment by Dr. Kalmar was not based on plaintiff's full medical record.

Regarding the first reason, as discussed above, the questionnaire completed by Dr. Magalong should have been given controlling weight, or the ALJ should have given specific and legitimate reasons for not doing

18

so. Neither Dr. Lorber nor Dr. Kalmar ever actually examined plaintiff. The ALJ's reliance on their opinions rather than on the opinion of plaintiff's treating physician, Dr. Magalong, without a specific and legitimate reason for doing so, constitutes error.

Regarding the second reason, the ALJ relied almost exclusively on the opinion of Dr. Lorber, largely because the ALJ appears to share Dr. Lorber's skepticism about the legitimacy of a diagnosis of fibromyalgia. During plaintiff's hearing before the ALJ, Dr. Lorber mentioned that plaintiff had been diagnosed with fibromyalgia on multiple occasions, and that he had seen the questionnaire submitted by plaintiff's treating physician, but Dr. Lorber then proceeded to ignore those facts when giving his assessment of plaintiff's limitations. (A.R. 27-28.) When asked about fibromyalgia by plaintiff's attorney, Dr. Lorber said, "I don't give much weight to the diagnosis of fibromyalgia[,] and I'll leave that decision up to the judge as to further consideration of fibromyalgia." (A.R. 29.)

The ALJ expressed his belief that it was impossible for plaintiff to have fibromyalgia along with other ailments, because fibromyalgia is a "garbage can disorder" (A.R. 40), even though plaintiff had been diagnosed with fibromyalgia several times by several doctors. When plaintiff's attorney asked him to consider plaintiff's diagnosis of fibromyalgia the ALJ responded by saying, "Well, let's argue about it. Yeah, it's recognized as a syndrome. It's not a disease. . . . And I don't need you to lecture me. I've read every website there is on fibromyalgia. . . . Well, it's never there to start with according to the journals just because of complaints." (A.R. 40-42.)

19

While the ALJ gives lip service to plaintiff's diagnosed fibromyalgia by listing it as a severe impairment, he relies heavily on the evaluation of a doctor who does not believe in fibromyalgia, and he himself expresses hostility to the idea that plaintiff has fibromyalgia. This is error. The Ninth Circuit has recognized that fibromyalgia is a legitimate disease, the existence of which is accepted by medical professionals. *See* <u>Rollins</u>, 261 F.3d at 855 (stating that fibromyalgia is "a syndrome that has been widely recognized in the medical community for only about 10 years"). The ALJ's use of the medical expert's opinion, and his own opinion about fibromyalgia, to justify not considering the limitations imposed by plaintiff's fibromyalgia, constitutes error.

Regarding the third reason, in posing questions to the vocational expert, the ALJ greatly favored the RFC completed by a medical consultant, Dr. Kalmar, who, it seems, did not actually treat plaintiff, but completed the RFC in 2007, based on medical records then available. (A.R. 189-94.) The ALJ did not mention Dr. Kalmar in his decision, but it is clear from the transcripts of the proceedings that the ALJ used Dr. Kalmar's assessment much more heavily than that of Dr. Magalong's in posing hypothetical questions to the vocational expert and in making his decision. (A.R. 24-43.) Dr. Kalmar made his assessment in 2007, and so did not have the medical records for the period after April 4, 2007. (A.R. 189-94.) Therefore, Dr. Kalmar's RFC is based on incomplete medical records. The ALJ's use of Dr. Kalmar's assessment from 2007, over plaintiff's treating physician's assessment from 2009, constitutes error.

Accordingly, the Court finds that the ALJ should either use Dr. Magalong's assessment over those of Dr. Lorber and Dr. Kalmar in posing hypotheticals to the vocational expert, or he should give specific and legitimate reasons for not doing so.

**III. <u>Remand Is Required</u>.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

On remand, the ALJ must correct the above-mentioned deficiencies and errors. The ALJ needs to reconsider plaintiff's testimony regarding her pain and ability to work and, if appropriate, give clear and convincing reasons for rejecting it. In addition, the ALJ must give plaintiff's treating physician's opinion its deserved weight or give specific and legitimate reasons for not doing so. Additional testimony from a vocational expert to determine what work, if any, plaintiff can perform will likely be required.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:   July 26, 2011

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE